## PROCTOR et al. v. FOSTER et al.

No. 12136—Opinion Filed Nov. 12, 1924.

(Syllabus.)

**1. Marriage—Divorce — Validity — Indian Tribal Customs.**

Marriages, contracted between tribal Indians according to the usages and customs of their tribe, at a time when the tribal government and relations are existing, will be upheld by the courts, in the absence of a federal law rendering invalid the laws and customs of the tribe.

(a) A dissolution of the marriage contract, according to such tribal laws. usages, and customs, will be likewise upheld by the courts.

**2. Marriage—Proof—Cohabitation and Reputation.**

Cohabitation and reputation do not constitute marriage, but only evidence tending to raise a presumption of marriage from circumstances.

**3. Same.**

In order for such presumption of marriage to arise, it must be shown there was a recognition of the marriage relation by the parties themselves and a holding out of each other as husband and wife, respectively, and that they were so recognized in the community by their relatives and associates.

**4. Judgment Sustained.**

Record examined, and held, the evidence is sufficient to support the judgment of the trial court and the instructions of the court fairly submit the issues to the jury.

Error from District Court, Okfuskee County: John L. Norman, Judge.

Action by Johnson Proctor and others against William A. Foster and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Diamond & Orr, for plaintiffs in error.

C. T. Huddleston and Logan Stephenson. for defendants in error.

George S. Ramsey, Edgar A. deMeules, Villard Martin, W. L. Ransom, amici curiae.

Joseph C. Stone, John Caruthers, and J. C. Wright. for petitioners.

McNEILL, C. J. Johnson Proctor. Billie

Proctor, and Stella Proctor commenced this action, each seeking to recover an undivided one-ninth interest in and to the allotment of Ellen Proctor, a full-blood Creek Indian who died in 1908. The facts material to this controversy may be stated about as follows: Some 40 years ago, Louis Proctor with one son and Sehoke with one daughter to wit, Ellen Proctor, commenced living together in two small houses of one room each, but close enough together to be considered one house. One of the houses or rooms was used as a kitchen and the other for sleeping purposes. When Louis and Sehoke first began cohabitating together, Ellen Proctor was some ten or twelve years of age. Three children were born as the result of the cohabitation between Louis Proctor and Sehoke. Sometime thereafter, the exact date being indefinite and uncertain, Louis Proctor and Ellen Proctor began cohabitating together and three children were born as the result of that cohabitation. No change of residence ever took place, but all the parties, including the various children of the various cohabitations, and Sehoke continued to live and remain in the same rooms or houses. Sehoke died in 1906 and the rest of the family continued to occupy the premises until Ellen Proctor died in 1908. The evidence is somewhat conflicting upon the number of beds in the house, some contend there was only one and others contend there were two. The evidence discloses that for the last 17 or 18 years prior to the death of Ellen Proctor, she and Louis Proctor occupied the same bed. Sehoke and the other children slept in a different bed or on a bed on the floor, and there is some testimony that they slept in a different room.

It is conceded by the three plaintiffs in this action that Ellen Proctor is their mother and Louis Proctor is their father. About the year 1910, William Foster purchased from each of the plaintiffs herein a two-ninths interest in and to the allotment of Ellen Proctor and from Louis Proctor a one-third interest. The plaintiffs by this proceeding attempted to bastardize themselves, admitting Louis Proctor is their father, but contend he was never married to Ellen Proctor, their mother, and inherited no part of Ellen Proctor's allotment, and they contend each of them inherited a one-third interest in said premises, each having sold only a two-ninths interest in the premises, they now each own an undivided one-ninth interest in the same. The case was tried to a jury and the jury returned a verdict in favor of the defendant and against the plaintiffs. From that judgment the plaintiffs have appealed.

For reversal it is contended, first, that the verdict is contrary to the law and to the evidence. It is contended by the plaintiffs in error that under the facts in the case Sehoke and Louis Proctor were married according to the Indian custom, and the evidence is insufficient to show a separation or dissolution of said marriage; and no marriage could in law exist between Louis Proctor and Ellen Proctor so long as the marriage relation existed between Sehoke and Louis, as Louis Proctor was incapable of entering into a marriage with Ellen Proctor because he had a living wife and undivorced, and the cohabitation with Ellen was meretricious at its inception, and being meretricious in its inception, it is presumed to be so considered after the death of Sehoke.

This court in a long line of decisions has announced in substance that a marriage contracted between members of the Five Civilized Tribes, in accordance with the customs of such tribe, will be recognized by the courts as a regular and valid marriage. The same effect is also given to the dissolution of marriages under the custom of the tribe as is given to the marriages. Buck v. Branson, 34 Okla. 807, 127 Pac. 436; James v. Adams, 56 Okla. 450, 155 Pac. 1121, and also Brokesholder v. Brokesholder, 84 Okla. 249, 204 Pac. 284, and cases cited on page 287.

This court has likewise held that cohabitation and reputation do not constitute marriage, but only evidence tending to raise a presumption of marriage from circumstances, and in order to create said presumption it must be shown that the parties have openly cohabitated as husband and wife for a considerable time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them. See Davis v. Reeder, 102 Okla. 106, 226 Pac. 880, and cases therein cited.

There are three material questions of fact to be decided in this case: First, were Louis Proctor and Sehoke married according to the Indian custom? Second, was the marriage relation between Louis Proctor and Sehoke ever dissolved according to the custom of the tribe? And third, were Louis Proctor and Ellen Proctor ever married according to Indian custom? The uncertainty of the evidence regarding these questions arises because the material witnesses were nearly all full-bloods and the facts and circumstances necessary to prove these questions occurred many years ago, and the witnesses by their

own testimony disclose their memories regarding dates are not accurate. There is no direct proof regarding the exact date or year that Sehoke and Louis first started cohabiting together, but that about 40 years ago they lived in the same house together until Sehoke died, and they cohabited together for a considerable length of time and were recognized as husband and wife, and raised three children. There is evidence that for 15 to 18 years prior to the death of Sehoke, Louis was cohabiting with Ellen Proctor and Louis and Ellen raised three children and they were recognized as husband and wife and there is evidence that the people generally recognized Sehoke and Louis as being divorced. There is evidence in the record that when Sehoke died in the year 1906, the people in the neighborhood paid the burial expenses. There is also evidence that when Ellen Proctor died Louis Proctor paid the expenses. The children in the case testified that as far back as they could remember Louis Proctor and their mother occupied the same bed, and it was generally understood that Louis Proctor and their mother were husband and wife. There was evidence introduced regarding the custom and marriage of the Creek Indians, and the custom of divorce, and there was also introduced the copy of the Creek laws regarding divorce. There is evidence that Louis Proctor was a Baptist minister and they had a church trial, contending he was living with two women and that he had chosen and taken Ellen as his wife. The facts sought to be established by both sides were not based on any direct testimony of marriage or divorce, but depend on the presumption created by the cohabitation and reputation among people that Louis and Sehoke were married according to the Creek custom, and that they had been divorced according to Creek custom and Louis and Ellen were married according to the Creek custom. We think the evidence is ample to support the finding of the jury.

It is further contended that divorce according to the Creek custom has no validity because the Creek laws provided for a divorce in the court of the Creek Tribe. It is unnecessary to discuss this question, because this court has held to the contrary in the following cases: James v. Adams 56 Okla. 450, 155 Pac. 1121; Cyr v. Walker, 29 Okla. 289, 116 Pac. 931; Buck v. Branson, supra. See, also, Palmer v. Cully, 52 Okla. 454, 153 Pac. 154.

The plaintiff further contends that the court erred in its instructions to the jury. The law relating to marriages and divorces

according to Creek custom has been discussed heretofore, and it will be unnecessary to discuss the law again in relation to the instructions, except to say that when the instructions are considered with the facts, they fairly cover the issues. It is contended instruction No. 13 is contrary to the rule announced in Clark v. Barney, 24 Okla. 455, 103 Pac. 598. We do not think the law announced in Clark v. Barney can have any application to the facts in the case at bar, for the reason there is no direct proof of marriage nor divorce between any of these parties; as stated heretofore, the evidence only creates a presumption, and the only question is whether the evidence was sufficient to create the presumption, both of marriage and divorce. It is further contended that Louis and Ellen were prohibited by the Session Laws of 1907-08, chapter 55, art. 1, from entering into the marital relation, but this marriage if consummated was many years before the adoption of that act, and the death of Ellen Proctor occurred about the time the statute was enacted, so the statute can have no application to the case at bar. We think the instruction fairly covers the law in the case, and if there was any error, the same was harmless. The case was fairly submitted to the jury, and there was sufficient evidence to support that judgment.

The parties have further discussed the question of whether this was a law case or an equity case, but we think it makes no difference which rule is invoked, for the evidence is ample to support the judgment of the trial court upon either theory.

For the reasons stated, the judgment of the trial court is affirmed.

NICHOLSON, BRANSON, JOHNSON, MASON, LYDICK, WARREN, and GORDON, JJ., concur.